NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230204-U

NO. 4-23-0204

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 5, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CHRISTOPHER PHILLIPS, Individually and as Parent and Next Friend of C.J.P, a Minor, and CHELSIE PLUMMER, Individually, | ) ) ) | Appeal from the Circuit Court of Sangamon County |
| Plaintiffs-Appellants, | ) | No. 20L215 |
| v. | ) | |
| AMY HAVENAR, | ) | Honorable |
| Defendant-Appellee. | ) ) | Raylene DeWitte Grischow, Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, holding:

(1) the trial court did not abuse its discretion by excluding portions of plaintiffs' billing expert's evidence deposition testimony;

(2) the court did not abuse its discretion by barring a plastic surgeon from offering testimony concerning matters that were not disclosed in discovery;

(3) the court did not err by barring a second plastic surgeon from testifying concerning the injured child's need for future medical care when the physician had not seen the child in almost a year;

(4) plaintiffs' claim that the court erred by denying their motion for a directed verdict was moot;

(5) plaintiffs failed to show they were prejudiced by allegedly erroneous rulings on certain pretrial motions;

(6) plaintiffs forfeited their argument that the court erred when it ruled that their billing expert's evidence deposition could not be altered as they requested by failing to support the argument with citations to relevant authority; and

(7) the court did not abuse its discretion by denying plaintiffs' posttrial motion for an *additur* or new trial on the issue of damages.

¶ 2        Plaintiffs, Christopher Phillips, individually and as parent and next friend of

C.J.P., a minor, and Chelsie Plummer, individually, filed a lawsuit against defendant, Amy

Havenar. (During his trial testimony, Phillips stated that his name was "Christopher Phillips

Howell," whereas his name is stated as "Christropher Phillips" in the pleadings. We refer to him

as "Christopher Phillips" throughout this order to maintain consistency.) Phillips was C.J.P.'s

father and Plummer was his mother. The lawsuit concerned an incident during which C.J.P. was

bitten by defendant's dog and suffered injuries to his face, left arm, back, and chest. C.J.P. was

four years old at the time of the incident. Plaintiffs alleged claims of negligence and a violation

of section 16 of the Animal Control Act (510 ILCS 5/16 (West 2020)) against defendant.

Following a trial, a jury returned a verdict in plaintiffs' favor on their Animal Control Act claim

but not on their negligence claim. The jury awarded plaintiffs damages totaling $172,525.80.

¶ 3        On appeal, plaintiffs argue the trial court erred by (1) excluding portions of the

evidence deposition testimony of their billing expert, Rebecca Busch, (2) barring Dr. Victor

Stams from testifying concerning C.J.P.'s need for fat grafting and the cost of future medical

care, (3) barring Dr. Reuben Bueno from testifying as to C.J.P.'s need for future medical care,

(4) denying their motion for a directed verdict at the close of evidence, (5) making erroneous

rulings on certain pretrial motions, (6) ruling that Busch's evidence deposition testimony could

not be altered as requested by plaintiffs, and (7) denying their posttrial motion for an *additur* or a

new trial on the issue of damages due to the jury's allegedly erroneous calculation of "future

surgical costs." We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On November 2, 2020, plaintiffs filed a complaint against defendant, which was

subsequently amended twice. The third amended complaint asserted causes of action against

defendant for negligence and violating section 16 of the Animal Control Act (510 ILCS 5/16 (West 2020)). A jury trial commenced on October 24, 2022.

¶ 6                                    A. The Incident

¶ 7          The trial evidence established that, on July 19, 2020, C.J.P. was at the home of his friend, I.T. Defendant lived next door to I.T., and I.T. often played with A.H., defendant's daughter. A.H., I.T., and C.J.P. were all four years old at the time of the incident, and defendant allowed the children to play together in her backyard. Defendant owned a dog, which one witness described as medium-sized, approximately three feet tall, and weighing 40 to 50 pounds. Another witness described him as a large dog weighing approximately 100 pounds. Defendant testified the dog had never been aggressive before the incident.

¶ 8          On the day of the incident, defendant's paramour placed the dog in the backyard on a chain that was approximately 10 feet long. C.J.P, I.T., and A.H. went into the backyard to play on a swing set. C.J.P. walked over to pet the dog when it attacked him. I.T. observed the incident and testified the dog used C.J.P. like a "chew toy." Justin T., I.T.'s father, was in his backyard next door during the incident. He heard screaming, ran over to defendant's backyard, and observed the dog biting C.J.P.'s arm. Justin grabbed C.J.P., carried him inside, and called 911.

¶ 9          Lindsay Kaiser, a paramedic, testified that she responded to the scene shortly after the incident and observed C.J.P. covered in blood. She observed wounds on his face, neck, back, left upper arm, and armpit area. The wounds on his left upper arm were so significant that his bicep muscle was visible. On the way to the hospital, C.J.P. repeatedly asked if he was going to be okay, said he was scared, and asked if he was going to die.

¶ 10                                    B. Dr. Bueno

¶ 11        Outside of the presence of the jury, plaintiffs' counsel noted that the trial court had previously ruled off the record that Dr. Bueno would not be permitted to testify as to C.J.P.'s need for future medical care. The court then stated on the record that it had stricken the portion of Dr. Bueno's evidence deposition testimony concerning future medical care because Dr. Bueno had not seen C.J.P. since October 2020 and had indicated that he would need to see the child again to be able to render an opinion as to future medical care.

¶ 12        Dr. Bueno's redacted deposition was read to the jury. Dr. Bueno testified that he was a plastic surgeon, and he operated on C.J.P. on the evening of the incident. Dr. Bueno observed that C.J.P. had extensive injuries to the skin, fat, and muscle on his "left upper extremity," back, and chest. During the surgery, Dr. Bueno cleaned and repaired the wounds, excising 300 square centimeters of nonviable subcutaneous tissue and muscle and bringing the viable tissue together with sutures. Photographs of C.J.P.'s injuries taken at the hospital shortly after the incident were admitted along with Dr. Bueno's evidence deposition.

¶ 13        Dr. Bueno testified that he saw C.J.P. at several follow-up visits after he was released from the hospital. Dr. Bueno observed C.J.P.'s wounds were healing as expected, with no signs of infection. On October 14, 2020, when Dr. Bueno last saw C.J.P., his scars were firm and raised. There were still some healing wounds on his back. C.J.P. had some limitations in terms of the mobility of his left arm and shoulder, but his parents reported he was back to his normal activity levels. Dr. Bueno stated he could not offer an opinion within a reasonable degree of medical certainty as to whether C.J.P. would have any future limitations as to the strength and use of his left arm without examining him again. Dr. Bueno stated any opinion he offered on future limitations, pain and suffering, or treatment would be speculation.

¶ 14                                C. Dr. Stams

¶ 15          The evidence deposition of Dr. Stams, a plastic surgeon, was read to the jury. Dr. Stams testified that he examined C.J.P. in December 2021 and observed he had developed hypertrophic and keloid scars. Dr. Stams indicated C.J.P.'s scars were firm and immature at that time. According to Dr. Stams, scars often soften over time and typically mature within one to two years. He stated he advised Plummer that if she noticed changes in the scars, like growth, C.J.P. could return for steroid injections to soften the scars and reduce their progression.

¶ 16          Dr. Stams advised Plummer that it was not "imperative" for C.J.P.'s scars to be surgically excised, but Plummer or C.J.P. could choose to have them excised in the future. During such a procedure, Dr. Stams would remove the scar tissue and close the wounds with a series of sutures, creating "more favorable scars" than the original scars. Dr. Stams indicated surgery was not necessary to improve the function of the affected body parts and would likely be cosmetic in nature. Defense counsel asked Dr. Stams if he expected that C.J.P.'s scars would soften over time and not require further surgical intervention. Dr. Stams replied, "That is the usual process, yes." Defense counsel then asked Dr. Stams if he thought it was more likely than not that C.J.P. "will not require any intervention from [him] in the future." Dr. Stams replied, "More likely than not, yes."

¶ 17          During the trial, plaintiffs indicated they also wished to call Dr. Stams to give live testimony concerning a phone conversation he had with Busch, their billing expert, after his evidence deposition was taken. Plaintiffs also wished to question him concerning the cost of future medical care. Defendant objected, asserting plaintiffs had not questioned Dr. Stams about the cost of future medical care in either his discovery deposition or evidence deposition. The trial court ruled Dr. Stams could provide in-court testimony as to the matters disclosed in his evidence deposition, but he could not testify concerning his conversation with Busch, the specific costs of

procedures, or other matters that were not disclosed in discovery. The court stated Dr. Stams would not be allowed to "talk about that stuff" because it would be violative of Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018), as it was not disclosed until after discovery was concluded. Plaintiffs called Dr. Stams to make an offer of proof outside the presence of the jury concerning the necessity of preoperative and postoperative appointments for scar revision surgery, the cost of surgery, and postoperative occupational therapy. Dr. Stams stated during the offer of proof that he did not recall having a telephone call with Busch.

¶ 18                                    D. Rebecca Busch

¶ 19                              1. *Motions Concerning Busch's Testimony*

¶ 20          Several motions concerning Busch's testimony were presented and decided prior to and during the trial. On September 30, 2022, plaintiffs filed their fifth motion *in limine*, which sought admission of Busch's testimony concerning the calculation of C.J.P.'s future medical costs. On October 3, 2022, defendant filed her fifth and sixth motions *in limine*, which requested that the trial court bar Busch from testifying at trial and bar plaintiffs from presenting evidence that C.J.P. may need future medical care or the costs of such care. On October 11, 2022, the court granted plaintiffs' motion and denied defendant's motions.

¶ 21          On October 18, 2022, defendant filed a motion to reconsider the rulings on her fifth and sixth motions *in limine*. Defendant argued that Busch should be barred from testifying concerning the costs of future psychological treatment, occupational therapy, fat grafts, and sedation for C.J.P. because no qualified medical experts would be testifying at trial that C.J.P. would need such treatments in the future. Defendant also asserted that Busch should not be permitted to testify as to a phone conversation she had with Dr. Stams, as Dr. Stams's alleged statements to Busch would not be subject to cross-examination. On October 24, 2022, the day the

trial commenced, the court ruled that Busch's phone conversation with Dr. Stams was inadmissible hearsay. The court took the rest of defendant's motion to reconsider under advisement.

¶ 22　　　　The trial court and the parties again addressed Busch's testimony on the second day of the trial. Defense counsel objected to Busch testifying as to the cost of a fat grafting procedure because her opinion was based a phone call with Dr. Stams, which counsel asserted constituted inadmissible hearsay, and plaintiffs had not otherwise disclosed in discovery that C.J.P. would need future fat grafting procedures. Plaintiffs' counsel argued that fat grafting was a type of scar revision surgery and that Dr. Stams had testified in his evidence deposition that C.J.P. could undergo future scar revision surgeries. The court ruled Busch could not testify as to the cost of a future fat grafting procedure, finding plaintiffs had not properly disclosed in discovery that C.J.P. would need such a procedure in the future. The court also struck Busch's evidence deposition testimony as to the cost of psychological treatment, occupational therapy, anesthesia, and preoperative and postoperative surgical clearances because no medical provider had testified that C.J.P. would need such treatment. Additionally, the court struck all references to Busch's phone conversation with Dr. Stams from her evidence deposition.

¶ 23　　　　　　　　　2. *Redacted Evidence Deposition Testimony*

¶ 24　　　　Busch's redacted evidence deposition was read to the jury. Busch testified that she was an expert healthcare consultant, and she was president and chief executive officer of a company called Medical Business Associates. She was also a registered nurse. Plaintiffs tendered Busch as "an expert in the area of healthcare cost examinations including but not limited to forensic audits, current health care costs and subsequent future healthcare cost evaluations."

¶ 25        Busch testified she had been hired by C.J.P.'s attorneys to conduct a "prospective review" whereby, based on information provided by C.J.P.'s medical providers, she calculated the costs associated with C.J.P.'s future medical services. Busch used current procedural terminology (CPT) codes to project the cost of future medical care. When projecting the costs of future care, Busch always used the most conservative, least costly applicable codes. Busch reviewed C.J.P.'s medical records, medical bills, and depositions of physicians in preparing her report. She indicated she used her clinical background to understand the services articulated in the medical records and depositions. She then used her coding and financial background to "convert those statements directly into the appropriate coding language." Busch indicated she was not offering opinions as a medical provider as to what future procedures C.J.P. might need. Rather, she was "only offering the communications of those needs as documented in [her] report and the proper coding and CPT language."

¶ 26        Busch stated that, pursuant to "coding rule[s]," the projected cost of a steroid injection in one scar was $1111.76, and the cost of injections in multiple scars was $961.81 per scar. She testified the projected cost of scar revision surgery was $10,361.04 per scar.

¶ 27                            E. Christopher Phillips

¶ 28        Phillips testified that he was notified on the day of the incident that C.J.P. had been attacked by a dog. When he first saw C.J.P. at the hospital, he observed wounds on C.J.P.'s arm that were so deep that his bone was visible. C.J.P. underwent surgery and remained in the hospital for approximately one week. Phillips observed that C.J.P appeared to be in pain throughout his hospital stay, noting C.J.P. cried and was in pain when his bandages were changed, which occurred every six hours.

¶ 29        Phillips indicated that, after C.J.P. was discharged from the hospital, he was not able to play outside, play with friends, swim, play sports, or go to school. C.J.P.'s bandages had to be changed every six hours for approximately six to eight weeks after he was discharged. He began having night terrors after the incident, which he did not have before the attack. C.J.P. did not have full range of motion in his left arm after the incident. He also had itching on his left arm, back, and side. Phillips indicated he wanted to have all of C.J.P.'s scars revised with steroid injections and surgery when he was older. He stated he also intended to take C.J.P. to obtain a mental health evaluation in the near future. He indicated C.J.P. appeared to be self-conscious about his scars, his left arm was not as strong as his right arm, and he had a reduced range of motion.

¶ 30                     F. Chelsie Plummer

¶ 31        Plummer testified that she agreed with Phillips's decision to wait until C.J.P. was older, possibly in middle school, for him to have scar revision surgery. Photographs depicting C.J.P.'s scars were admitted into evidence. Plummer identified in these photographs the scars which she wished to have excised. She testified that Dr. Stams advised her in December 2021 that further surgeries on C.J.P.'s arm were not medically necessary at that time. She indicated C.J.P. currently had good range of motion in his arm, could move his hand and arm normally, and did not have any pain in the arm.

¶ 32                     G. Verdict

¶ 33        At the close of the evidence, plaintiffs moved for a directed verdict on their claim under the Animal Control Act, and the trial court denied the motion.

¶ 34        On October 28, 2022, the jury returned a verdict finding in favor of plaintiffs on their Animal Control Act claim and against them on their negligence claim. The jury awarded

C.J.P. damages totaling $75,000, including: $35,000 for past pain and suffering; $15,000 for disfigurement; $10,000 for loss of a normal life; and $15,000 for past emotional distress. The jury awarded no damages for future pain and suffering, future loss of a normal life, or future emotional distress. The jury awarded Phillips and Plummer damages for C.J.P.'s past necessary medical care and treatment in the amount of $87,525.80 and damages for future medical care and treatment in the amount of $10,000.

¶ 35        Plaintiffs filed a motion for a new trial or, alternatively, "judicial adjustment of damages," asserting numerous claims of error. The trial court denied the motion in its entirety. This appeal followed.

¶ 36                                II. ANALYSIS

¶ 37        On appeal, plaintiffs argue the trial court erred by (1) excluding portions of Busch's evidence deposition testimony, (2) barring Dr. Stams from testifying concerning C.J.P.'s need for fat grafting and the cost of future medical care, (3) barring Dr. Bueno from testifying as to C.J.P.'s need for future medical care, (4) denying their motion for a directed verdict at the close of the evidence, (5) making erroneous rulings on certain pretrial motions, (6) ruling that Busch's evidence deposition testimony could not be altered, and (7) denying their posttrial motion for an *additur* or a new trial on the issue of damages due to the jury's erroneous calculation of "future surgical costs."

¶ 38                            A. Busch's Testimony

¶ 39        Plaintiffs assert the trial court erred in limiting Busch's testimony concerning the cost of C.J.P.'s future medical care. Plaintiffs first contend the court incorrectly barred Busch's testimony concerning the cost of certain future care on the basis that no medical provider had indicated that C.J.P. would need such care. Plaintiffs also argue the court erred by barring Busch

- 10 -

from testifying concerning her "physician's query" phone conversation with Dr. Stams on the basis that it was hearsay and by excluding evidence of the physician's query without conducting a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

¶ 40    1. *Limiting Testimony Regarding the Cost of Future Medical Care*

¶ 41    Plaintiffs argue the trial court abused its discretion by barring Busch from testifying as to the cost of certain future medical care for C.J.P. on the basis that no medical provider would testify concerning the need for such care. Plaintiffs sought to introduce testimony from Busch concerning the cost of anesthesia, fat grafting, preoperative surgical clearances, postoperative surgical clearances, an occupational therapy examination following surgery, and mental health evaluations. Plaintiffs argue these costs were related to the future medical procedures Dr. Stams testified C.J.P. could possibly undergo, and there was an adequate evidentiary foundation for them. Defendant contends the court's limitation of Busch's testimony was proper because there was an insufficient foundation for the stricken testimony.

¶ 42    "An expert's opinion is only as valid as the bases and reasons for the opinion." *Soto v. Gaytan*, 313 Ill. App. 3d 137, 146 (2000). "A party must lay a foundation sufficient to establish the reliability of the bases for the expert's opinion." *Petraski v. Thedos*, 382 Ill. App. 3d 22, 28 (2008). "Expert opinions based on guess, speculation, or conjecture are inadmissible." *Torres v. Midwest Development Co.*, 383 Ill. App. 3d 20, 28-29 (2008). "Possible future damages are not recoverable by the plaintiff unless they are reasonably certain to follow." *Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13, 45 (2009). "Evidence as to damages which is speculative, remote or based upon mere probability is improper." *Id.*

¶ 43    "The decision of whether to admit or exclude evidence, including whether to allow an expert to present certain opinions, rests solely within the discretion of the trial court and

will not be disturbed absent an abuse of discretion." *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 36-37 (2010). "An abuse of discretion occurs when a ruling is arbitrary, fanciful, or one that no reasonable person would make." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 41; see *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 44        We find that the trial court did not abuse its discretion by barring Busch from testifying as to the cost of fat grafting, future mental health evaluations, anesthesia, preoperative and postoperative consultations, and an occupational therapy evaluation. No medical provider testified that C.J.P. would need these treatments or services in the future due to his injuries, and plaintiffs did not otherwise present any evidence indicating C.J.P. was reasonably certain to need them. Busch was tendered as an expert in healthcare cost examinations, and her role was limited to giving opinions as to the cost of C.J.P.'s future medical care. In the absence of evidence indicating that C.J.P. would require the identified treatments and services in the future, the court's decision to bar Busch's testimony concerning their cost was not arbitrary, fanciful, or unreasonable.

¶ 45        We reject plaintiffs' argument that Busch should have been permitted to testify as to the cost of anesthesia, preoperative and postoperative consultations, and a postoperative occupational therapy evaluation because Dr. Stams testified concerning the possibility of future scar revision surgery. Neither Dr. Stams nor any other medical provider offered details as to the particular care and services that would be necessary if C.J.P. were to undergo a scar revision procedure. Certainly, no medical witness testified as to what type of anesthetic would be required, whether preoperative and postoperative consultations would be required, how many preoperative and postoperative consultations (if any) would be necessary, or whether an occupational therapy evaluation would be needed after surgery. Under these circumstances, we

find the trial court's decision to bar Busch from testifying as to these specific costs was not arbitrary, fanciful, or one that no reasonable person would make. See *Evans*, 2021 IL 125513, ¶ 41.

¶ 46    We also reject plaintiffs' assertion that Busch should have been permitted to testify as to the cost of fat grafting because it is apparent to the "naked eye" that a large amount of tissue was removed from C.J.P., and the jury "could easily have found that the dimpled, tissue-missing areas should be supplemented with fat." Plaintiffs cite *Maddox v. Rozek*, 265 Ill. App. 3d 1007, 1009-10 (1994), in support of their argument that expert testimony was not required to establish the need for fat grafting. The *Maddox* court held that, where the injury is obvious to the naked eye, a jury may award damages for future pain and suffering based on the nature of the injury alone. *Id.* However, the issue in the present case does not involve pain and suffering, but instead involves a claim for future medical expenses. While it may have been apparent to the naked eye that C.J.P. was missing tissue in the area of his scars, it was not obvious that he might need to undergo a fat grafting procedure in the future to remedy this. Whether or not he might need a fat grafting procedure in the future could only be determined by a qualified medical provider. Accordingly, the trial court's decision to disallow Busch's testimony as to the cost of a fat grafting procedure was not arbitrary, fanciful, or unreasonable where there was no medical testimony indicating C.J.P. was likely to undergo such a procedure in the future.

¶ 47        2. *Exclusion of Testimony Regarding Physician's Query*

¶ 48    Plaintiffs argue that the trial court erred by barring evidence of Busch's "physician's query" phone conversation with Dr. Stams on the basis that it constituted inadmissible hearsay. Plaintiffs contend the physician's query was the type of information upon

which experts in Busch's field reasonably relied and, accordingly, it was admissible under Illinois Rule of Evidence 703 (eff. Jan. 1, 2011). Plaintiffs argue the court's ruling prevented them from "presenting evidence regarding the need for fat grafting surgery" and that their damages award for future medical care would have been larger if the evidence had been allowed.

¶ 49        Rule 703 provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." *Id.*

Rule 703 is nearly identical to a former version of Federal Rule of Evidence 703 (Jan. 2, 1975) that was adopted by our supreme court in *Wilson v. Clark*, 84 Ill. 2d 186, 195 (1981). Our supreme court has recognized that this rule does not create an exception to the rule against hearsay, as the underlying facts or data upon which an expert is found to have reasonably relied are not admitted for their truth but rather for the limited purpose of explaining the basis of the expert's opinion. *City of Chicago v. Anthony*, 136 Ill. 2d 169, 185 (1990). Moreover, "a trial judge need not allow an expert to recite inadmissible evidence when its probative value in explaining the opinion is outweighed by its likely prejudicial impact or tendency to create confusion." *Rios v. City of Chicago*, 331 Ill. App. 3d 763, 772 (2002).

¶ 50        Thus, pursuant to the foregoing authority, Dr. Stams's statements to Busch during the physician's query could not have been admitted through Busch's testimony under Illinois Rule of Evidence 703 (eff. Jan. 1, 2011) for their truth—*i.e.*, to establish that C.J.P. needed future fat grafting surgery. While the statements were arguably admissible for the limited

purpose of explaining Busch's opinion regarding the cost of this procedure, plaintiffs do not indicate that they wished to have the statements admitted for this limited purpose. Rather, plaintiffs indicate they sought admission of these statements to "establish the need for fat grafting surgery," which would have required that the statements be admitted for their truth.

¶ 51 Moreover, the trial court had previously barred plaintiffs from offering any undisclosed expert opinions by Dr. Stams, which clearly would have included an opinion that C.J.P. required a fat grafting procedure. Under the circumstances, it would have been improper for plaintiffs to have then elicited through Busch the very same undisclosed opinion by Dr. Stams in a "back door" manner. Accordingly, we conclude the trial court did not abuse its discretion in excluding Busch's testimony about the "physician's query." While our rationale supporting the exclusion of the physician's query is somewhat different from the one articulated by the trial court, we may affirm the judgment of the trial court on any basis that is supported by the record. *Stoll v. United Way of Champaign County, Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008).

¶ 52 3. Frye *Hearing*

¶ 53 Plaintiffs also argue that the trial court erred by excluding evidence of Busch's physician's query with Dr. Stams without holding a *Frye* hearing. "[T]he *Frye* standard dictates that scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is 'sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *In re Commitment of Simons*, 213 Ill. 2d 523, 529 (2004) (quoting *Frye*, 293 F. at 1014); see Ill. R. Evid. 702 (eff. Jan. 1, 2011). The *Frye* standard applies only to new or novel scientific methodologies. *Simons*, 213 Ill. 2d at 530. Here, the record shows that defendant did not seek to exclude the physician's query based on *Frye* principles. Nor was

the court's decision to exclude the testimony related in any way to *Frye*. Accordingly, we find plaintiffs' *Frye* argument to be inapposite.

¶ 54                                B. Limiting the Testimony of Dr. Stams

¶ 55          Plaintiffs argue that the trial court erred by barring Dr. Stams from giving in-court testimony and specifically barring him from testifying concerning his physician's query with Busch, the need for C.J.P. to undergo future fat grafting procedures, and the cost of future medical care. Plaintiffs contend that Dr. Stams should have been permitted to testify as a live witness, notwithstanding that he previously gave testimony in an evidence deposition, pursuant to Illinois Supreme Court Rule 212(b) (eff. Oct. 1, 2020). Plaintiffs also argue the court erred by barring this testimony on the basis that they had not properly disclosed the opinions they sought to elicit from Dr. Stams.

¶ 56                                      1. *Rule 212*

¶ 57          We first address plaintiffs' argument that the trial court erred by barring Dr. Stams from testifying in court. Rule 212(b) provides, in relevant part: "The evidence deposition of a physician or surgeon may be introduced in evidence at trial on the motion of either party regardless of the availability of the deponent, without prejudice to the right of either party to subpoena or otherwise call the physician or surgeon for attendance at trial." Ill. S. Ct. R. 212(b) (eff. Oct. 1, 2020). Thus, pursuant to Rule 212(b), the introduction of a physician's evidence deposition does not prevent a party from being able to call the physician as a live witness. *Castillo v. Stevens*, 2019 IL App (1st) 172958, ¶ 38.

¶ 58          Here, plaintiffs are mistaken in asserting the trial court barred Dr. Stams from testifying at all as a live witness. In fact, the court expressly ruled that Dr. Stams could give live

testimony, although he was prohibited from discussing matters that had not been disclosed in discovery. We proceed to address that ruling.

¶ 59                    2. *Failure to Disclose Opinions in Discovery*

¶ 60            As previously stated, the trial court barred Dr. Stams from testifying concerning the cost of future medical care, fat grafting, and other matters that were allegedly discussed in his physician's query with Busch because plaintiffs had not disclosed these matters in their Rule 213(f) disclosures or Dr. Stams's discovery deposition or evidence deposition.

¶ 61            Illinois Supreme Court Rule 213(f) (eff. Oct. 1, 2020) provides that, upon a written interrogatory, a party must furnish the identities of witnesses who will testify at trial and, for independent expert witnesses, "must identify the subjects on which the witness will testify and the opinions the party expects to elicit." Rule 213(g) provides that "[t]he information disclosed in answer to a Rule 213(f) interrogatory, or in a discovery deposition, limits the testimony that can be given by a witness on direct examination at trial." Ill. S. Ct. R. 213(g) (eff. Oct. 1, 2020). The fact that a witness's trial testimony elaborates on or is more precise than an originally disclosed opinion does not necessarily result in a violation of Rule 213, but the testimony must be encompassed by the witness's original opinion. *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 576 (2001). "Opinion testimony is 'limited to comments within the scope of and consistent with the facts and opinions disclosed in discovery.' " *Id.* (quoting *Parker v. Illinois Masonic Warren Barr Pavilion*, 299 Ill. App. 3d 495, 501 (1998)). "A trial court's decision regarding whether an opinion has been adequately disclosed such that it may be admitted into evidence is reviewed applying the abuse-of-discretion standard." *Id*.

¶ 62            Here, plaintiffs indicated in their Rule 213(f) disclosures that Dr. Stams was a plastic surgeon and would testify as to his assessments, plans of care, care rendered to C.J.P.,

causation, pain and suffering, and scarring. The parties indicate in their briefs that a discovery deposition of Dr. Stams was taken, but it does not appear in the record. In his evidence deposition, Dr. Stams indicated that C.J.P. could have scar revision surgery in the future, which he stated would involve cutting out the scar tissue and closing the wounds with sutures to create "more favorable scars." He did not testify that fat grafting would be a component of such a procedure. Nor did he indicate what type of anesthetic would be used, whether preoperative and postoperative evaluations would be necessary, or the cost of such a procedure.

¶ 63 Under these circumstances, we find the trial court did not abuse its discretion by barring Dr. Stams from testifying concerning fat grafting and other matters that he allegedly discussed over the phone with Busch. These matters were not encompassed by plaintiffs' Rule 213(f) disclosures, which did not even indicate that Dr. Stams would testify concerning future medical care, and we cannot determine from this record whether they were encompassed by his discovery deposition. While Dr. Stams discussed certain possible future medical procedures during his evidence deposition, including steroid injections and scar revision surgery, he did not specifically testify concerning the other matters plaintiffs have identified on appeal. We conclude the court's ruling prohibiting Dr. Stams from testifying concerning these matters because they were not disclosed in discovery was not an abuse of discretion. See *Evans*, 2021 IL 125513, ¶ 41.

¶ 64 C. Limitation of Dr. Bueno's Testimony

¶ 65 Plaintiffs argue that the trial court erred by barring Dr. Bueno from testifying as to C.J.P.'s need for future medical care if he continued to suffer from a lack of range of motion or strength deficits. We will not disturb the trial court's decision to exclude this testimony absent an abuse of discretion. *Cetera*, 404 Ill. App. 3d at 36-37.

¶ 66    In determining whether medical opinion testimony concerning the prognosis for a patient's injuries or condition is admissible:

> "Courts will consider the nature of the plaintiff's injury or condition, the type of treatment administered to the plaintiff, the length of time the plaintiff was receiving the treatment, the number and frequency of the plaintiff's visits, the length of time between the plaintiff's last treatment and the witness' formation of his or her opinion, the length of time between the formation of the opinion and the trial, and any other circumstances that bear on the relevance and reliability of the proposed testimony." *Decker v. Libell*, 193 Ill. 2d 250, 254 (2000).

¶ 67    In the instant case, the trial court did not abuse its discretion in excluding Dr. Bueno's testimony concerning C.J.P.'s need for future medical care. Dr. Bueno last examined C.J.P. in October 2020—almost one year before his evidence deposition was taken and two years before the trial was held. In fact, Dr. Bueno stated during his evidence deposition that he would be speculating if he gave an opinion concerning C.J.P.'s need for future treatment because he had not treated C.J.P. in nearly a year. Under these circumstances, the court's decision to strike the portion of Dr. Bueno's evidence deposition testimony concerning the possible need for future medical care was not an abuse of discretion. See *Evans*, 2021 IL 125513, ¶ 41.

¶ 68                    D. Motion for a Directed Verdict

¶ 69    Plaintiffs argue the trial court erred by denying their motion for a directed verdict at the close of evidence as to their Animal Control Act claim. We find this issue is moot in light of the jury's subsequent verdict in plaintiffs' favor on this very same claim, and, accordingly, we will not address it on the merits. See *Condon v. American Telephone & Telegraph Co.*, 136 Ill.

2d 95, 99 (1990) ("Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions.").

¶ 70                                    E. Pretrial Rulings

¶ 71        Plaintiffs argue that several of the trial court's rulings on pretrial motions constituted an abuse of discretion. These include the court's rulings (1) excluding evidence that defendant's dog was a pit bull, (2) excluding evidence of the dog's aggressive behavior toward a police officer and animal control personnel after the incident, (3) barring plaintiffs from arguing that defendant violated a local ordinance in support of their negligence claim, (4) allowing defendant "to argue comparative or contributory fault" of C.J.P. as to both plaintiffs' negligence claim and Animal Control Act claim, (5) denying plaintiffs' motions to compel defendant to produce the dog's veterinary records and their motion for a negative inference based on her failure to do so, and (6) barring them from introducing a photograph of defendant's backyard.

¶ 72        "Erroneous evidentiary rulings are only a basis for reversal if the error was substantially prejudicial and affected the outcome of trial." (Internal quotation marks omitted.) *First Midwest Bank v. Rossi*, 2023 IL App (4th) 220643, ¶ 161. "Conversely, where it appears that an error did not affect the outcome of the trial, or where the reviewing court can see from the entire record that the error did not result in substantial prejudice, the judgment will not be disturbed." *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 784-85 (2002). The burden of showing prejudice is on the party seeking reversal. *First Midwest Bank*, 2023 IL App (4th) 220643, ¶ 161.

¶ 73        The primary form of prejudice plaintiffs assert as to all of these allegedly erroneous rulings was that the rulings impacted their ability to prove defendant's liability, either with regard to proving lack of provocation as to their Animal Control Act claim or generally

proving their negligence claim. However, as the jury returned a verdict in plaintiffs' favor on their Animal Control Act claim, they were not prejudiced by any effect these rulings might have had on their ability to prove that claim.

¶ 74        Plaintiffs were also not prejudiced by these rulings in establishing their negligence claim. The jury found in plaintiffs' favor on their Animal Control Act claim and awarded them damages for C.J.P.'s injuries. Plaintiffs were only entitled to one recovery for these injuries even if defendant was found liable under multiple theories. See *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 558 (1980) ("[T]he courts in Illinois have long recognized the legal principle that a plaintiff shall have only one satisfaction for an injury [citations], irrespective of the availability of multiple theories that recovery for the injury can be sought under."); *Carollo v. Al Warren Oil Co.*, 355 Ill. App. 3d 172, 187-88 (2004) ("A plaintiff is entitled to one recovery only for his injuries, regardless of the number of theories advanced.").

¶ 75        Plaintiffs also claim that the trial court's allegedly erroneous exclusion of evidence of the breed of the dog and its behavior after the incident led to a reduced award of damages for pain and suffering. We reject these arguments. Evidence that the dog behaved aggressively toward third parties after the incident occurred was irrelevant to the pain and suffering experienced by C.J.P. Also, given the evidence presented at trial concerning the dog's size and the extensive evidence concerning the nature and extent of the injuries sustained by C.J.P., it is apparent that any error resulting from the exclusion of the dog's breed did not affect the outcome of the trial in the form a reduced damages award for pain and suffering. See *Bachman*, 332 Ill. App. 3d at 784-85.

¶ 76        In their reply brief, plaintiffs also assert for the first time that defense counsel's alleged contributory negligence and comparative fault arguments "could have seriously impacted

- 21 -

the jury's decision to award damages for both future and past pain and suffering as well as future medical costs." We find plaintiffs have forfeited their argument that this alleged error prejudiced them by reducing their damages award, as it was asserted for the first time in a conclusory manner in their reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief."); *Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338, 348 (2006) ("The appellant must argue the points that he or she raises, or they are waived. [Citation.] A conclusory assertion, without supporting analysis, is not enough.").

¶ 77                  F. Trial Court's Refusal to Alter Busch's Deposition Testimony

¶ 78                  Plaintiffs argue the trial court erred by prohibiting them from altering Busch's evidence deposition testimony following the court's ruling on an objection. After the court determined Busch could not testify about the fat grafting procedure, plaintiffs proposed subtracting the cost of fat grafting from the cost ranges for total future medical expenses that Busch discussed during her evidence deposition. Instead, the court required plaintiffs to strike Busch's testimony concerning the cost ranges for total future expenses entirely because the ranges included the cost of fat grafting. Defendant argues plaintiffs forfeited this argument by failing to include any citations to authority in support of it, as required by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which provides that an appellant's brief shall include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on." We agree with defendant and find that plaintiffs have forfeited this argument due to their failure to comply with Rule 341(h)(7). See *Vilardo v. Barrington Community School District 220*, 406 Ill. App. 3d 713, 720 (2010) ("Contentions supported by some argument but by absolutely no authority do not meet the requirements of [Rule 341(h)(7)]." (Internal quotation marks omitted.)).

¶ 79                    G. Jury's Award for Future Medical Expenses

¶ 80          Finally, plaintiffs argue that the jury erred by "calculating the child's future

surgical costs at $10,000." Plaintiffs assert the evidence was uncontroverted that surgical

excision would cost $10,341.04 per scar, and C.J.P.'s parents testified they planned on having at

least 13 scars removed in the future. Plaintiffs request that we increase the damages award for

future medical expenses to $134,693.52 or, alternatively, remand the matter for a new trial on

damages.

¶ 81          Plaintiffs raised this issue in their posttrial motion, and the trial court denied their

request for a new trial or *additur*, finding the jury's verdict was not contrary to the manifest

weight of the evidence. "We review the trial court's grant or denial of a new trial or an *additur* or

*remittitur* for an abuse of discretion." *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156,

¶ 82; see *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992) ("A court's ruling on a motion for a

new trial will not be reversed except in those instances where it is affirmatively shown that it

clearly abused its discretion.").

¶ 82          The determination of damages is a question of fact within the discretion of the

jury, and a jury's award of damages is entitled to substantial deference. *Snover v. McGraw*, 172

Ill. 2d 438, 447 (1996). "Reviewing courts will not interfere with the jury's assessment of

damages unless a proven element of damages was ignored, the verdict resulted from passion or

prejudice, or the award bears no reasonable relationship to the loss suffered." *Gill v. Foster*, 157

Ill. 2d 304, 315 (1993). "Possible future damages are not recoverable by the plaintiff unless they

are reasonably certain to follow." *Diaz*, 397 Ill. App. 3d at 45.

¶ 83          Here, contrary to plaintiffs' characterization in their brief, the jury awarded

plaintiffs $10,000 in damages for "future medical care [and] [t]reatment." Nothing in the verdict

indicated the jury awarded damages specifically for future "surgical costs." Dr. Stams testified that C.J.P. may need steroid injections, scar revision surgery, or both in the future, and plaintiffs argued that the jury should award damages for both types of procedures. Plaintiffs presented evidence that scar revision surgery would cost $10,341.04 per surgical excision, and steroid injections would cost $1111.76 for one scar or $961.81 per scar for multiple scars.

¶ 84        Based on the evidence presented, it is possible the jury awarded future medical damages for several steroid injections but not for scar revision surgery. Notably, Dr. Stams testified that scar revision surgery was optional but not imperative, was not necessary to improve the function of the affected body parts, and would likely be cosmetic in nature. The jury may have found, based on Dr. Stams's testimony, that scar revision surgery was not a reasonably certain future expense but that steroid injections were. See *People v. Sullivan*, 366 Ill. App. 3d 770, 782 (2006) ("The trier of fact is free to resolve inconsistencies in testimony and is free to accept or reject as much or as little of a witness's testimony as it pleases."). Accordingly, we find the trial court did not abuse its discretion by denying plaintiff's motion for an *additur* or a new trial on damages.

¶ 85                           III. CONCLUSION

¶ 86        For the reasons stated, we affirm the trial court's judgment.

¶ 87        Affirmed.